## Bayes, et al. v. Town of Paintsville.

(Decided November 12, 1915.)

### Appeal from Johnson Circuit Court.

1. Municipal Corporations—Construction of Streets and Sewers by Town of Sixth Class on Ten-year Bond Plan—Work May Be Done by Apportionment of Cost on Abutting Real Estate—Effect of Acceptance of Work by Board of Trustees.— Under Section 3706, Kentucky Statutes, the boards of trustees of towns of the sixth class are given authority to construct both streets and sewers and provide that the expense incurred in so doing may be paid by a local assessment on abutting property, not exceeding fifty per cent. of the value of the ground, after such improvement is made, excluding the value of the buildings and

other improvements upon the property improved. The plan or method of improvement, as well as the necessity therefor, is a matter solely within the discretion of the board of trustees, whose action in respect thereto is beyond review by the courts, in the absence of a showing of fraud or corruption on the part of that body in the adoption or execution of the plan; and where the work as completed is accepted by the board of trustees, their judgment of the sufficiency of the work is conclusive, in the absence of a showing that they were guilty of fraud or mistake. Nor can the complaint of the owner of abutting property that the work of street construction was done in part under one contract and mainly completed under another, affect the right of the municipality to enforce its lien against his property for its due proportion of the cost of such work. The fact that a prior ordinance had been passed to do the work for less money can constitute no defense, the contractor having become insolvent after doing a small part of the work and the ordinance under which it had been let to him having been repealed, the necessity for the letting of another contract and for the completion of the work, was a matter to be determined by the board of trustees. Besides, if the owner of the abutting property was prejudiced by such action on the part of the board of trustees, he must allege and prove, not only that the cost to him and other property owners was increased by the change of contracts, but also that under a different, and the proper method of apportionment, he would be required to pay less.

2. Municipal Corporations—Conveyance to Evade Assessment—Effect of—When Disregarded.—Where the owner of property, after obtaining knowledge of the purpose of the municipality to improve a street abutting thereon, but before work upon the street was commenced, by deed conveyed to his wife a strip of ground from the front of the lot eight feet in width, reserving in the deed the use of it as a means of ingress and egress to and from the remainder of the lot, upon which his residence is situated, and providing that no fencing or sidewalks should be constructed thereon, such conveyance did not have the effect to relieve that portion of the lot retained by him of the lien created thereon by statute for its proportionate part of the cost of constructing the abutting street.

3. Municipal Corporations—Counterclaim—Cannot be Pleaded by the Owner of Abutting Property in an Action by a Municipality to Subject the Property to Its Part of the Cost of Constructing a Street in Front Thereof.—Damages for injury to property against which an assessment is levied, may not be set up as a counterclaim in an action by the city to enforce the assessment.

J. F. BAILEY for appellants.

G. B. MARTIN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The town of Paintsville, through its board of trustees, and under certain ordinances duly passed, inaugurated and executed a plan of street paving and sewerage, extending practically over the whole town. The work was done under what is generally known as the "ten year bond plan," authorized by the charter of towns of the sixth class, to which Paintsville belongs, such authority being found in section 3706, Kentucky Statutes. The cost of the street paving and sewerage construction done by the town of Paintsville aggregated, approximately, $80,000, and was all completed and paid for except what was assessed against the property of F. M. Bayes, his wife, Mary Bayes, and their daughter, Malta Bailey.

In making the improvements under the ten year bond plan mentioned the town of Paintsville let the contracts for the work and issued and sold bonds for the purpose of raising the money to pay for it. By the terms of the bonds the duty of collecting the assessments from the property owners is imposed upon the city, which pledges its faith and credit to exercise all legal means to enforce their collection. Its relation to the matter is, therefore, analagous to that of a trustee, the bondholders being the cestuis qui trustent.

It appears that the appellant, F. M. Bayes, owns three parcels of real estate in the town of Paintsville abutting streets paved and in which sewers were constructed, the first parcel lying on Court street, the second on Second street, and the third on Second and Court streets; and that each parcel was liable to an assessment tax for the paving of the street it abuts and construction of the sewer therein, and was assessed its proportionate part of such cost according to value; the amount assessed against the first parcel of real estate being $152.42, the amount assessed against the second parcel, $118.03, and the amount against the third parcel, $26.66.

Appellants having refused to pay these assessments, or any part thereof, this action was instituted by the appellees, Town of Paintsville and its board of trustees, for the recovery thereof and to enforce against the lots, respectively, liable therefor the liens allowed by statute as security for such assessments. Prior to the institution of this action there had been instituted in the same court by the appellants an action in which it was sought to enjoin the town of Paintsville and its board of trus-

tees from selling the bonds which had been issued for the purpose of obtaining the money with which to pay the cost of the improvements in question. The two actions were consolidated and heard together, the questions at issue between the parties being practically the same in each case.

By the petition in the action brought by appellants and their answer to the petition in the instant case, the validity of the assessments in question was attacked and the right of the appellee to subject the property, or any part of it, to the payment thereof denied. The attack upon the validity of the assessments also put in issue the validity of the several ordinances under which the work of improvement was done, the manner of their passage, the letting of the contracts for the work and the manner in which the work was performed; but by the production of copies of all the ordinances, contracts, and writings showing the proceedings thereunder, and other evidence found in the record, the performance of the work and the manner in which it was done, we are convinced that the whole proceedings, both as regards the validity of the ordinances, contracts, improvements, and the character of the work done in making the same, were planned and executed with unusual care. This conclusion enables us to waive consideration of the immaterial matters appearing in the voluminous record, and brings us to the consideration of the questions necessary to be determined.

First, it is insisted for appellants that the second parcel of real estate, mentioned as lying on Second street, is not subject to assessment for the improvement of that street because it does not abut the street. The basis for this contention is that Mary Bayes, wife of the appellant, F. M. Bayes, owns a strip of ground eight feet in width, extending along Second street, which abuts the street and lies between it and the remainder of the lot yet owned by F. M. Bayes. The facts shown by the evidence are that when the purpose of the appellee city to make the improvements in question became known, but before the work on the improvements began, the appellant, F. M. Bayes, by deed conveyed to his wife the eight-foot strip of ground in question, reserving in the deed the use of it as a means of ingress and egress to and from the remainder of the lot, upon which he then had and now has his residence, and providing that no fencing or side-

walk should be constructed thereon. In other words, under the provisions of the deed, the wife took nothing but the naked title to the ground, the full possession and right to the use thereof remain in the husband, and may be passed to his vendees, immediate and remote, in all respects as if the deed had not been executed. The circumstances attending the conveyance, together with the admissions contained in the testimony of the appellant, F. M. Bayes, convince us that the conveyance was made with the intent on the part of the grantor to avoid the assessment that was subsequently made upon the property for the improvement of the street in front of it.

The assessment cannot be defeated by such a scheme. If allowed, it would, in effect, nullify the act of the legislature giving municipalities authority to make such improvements at the cost of abutting property owners and place an undue burden upon those who had not resorted to such a scheme for a like purpose. The question, in the aspect here presented, has never been passed on in this jurisdiction, but in 28 Cyc., 1133, we find a statement of the law which we think applicable:

"Conveyances to Evade Assessments. Liability of land for an assessment attaches from the passage of an ordinance ordering an improvement, and will not be affected by a subsequent conveyance; and a colorable sale of the portion of a lot abutting an improvement, with intent to avoid an assessment, will not operate to exempt the part retained."

We, therefore, concur in the conclusion reached by the circuit court, that the lot in question, exclusive of the strip conveyed the wife, is, notwithstanding such conveyance, subject to the assessment.

Another ground of defense relied on by appellants is that the assessment of abutting property for the construction of a sewer is unauthorized and that the sewer on Second street, where abutted by their lot, is larger than that connecting with it. As to the first contention it is only necessary to say that section 3706, Kentucky Statutes, confers upon the board of trustees of a town of the sixth class power to construct sewers as well as streets, and also provides that the expense incurred in doing so may be paid by a local assessment upon abutting property, not exceeding fifty per cent. of the value of the ground, after such improvement is made, excluding the value of the buildings and other improvements upon

the property so improved. It is not claimed by appellants that the assessment, both for the cost of constructing the street and sewer, exceeds fifty per cent. of the value of the ground assessed, after the exclusion of the buildings and other improvements upon the property. The plan of paving the streets included the construction of sewers for carrying off the surface water. It appears that in some of the streets the dimensions of the sewer pipe is smaller than in others, but where this is so it was, according to the testimony of competent engineers and others, appearing in the record, indispensably necessary to the work of paving the street; and while the sewer in the particular street complained of by appellants may be somewhat larger than that connecting with it, this fact affords no evidence that the work was defectively performed or that it could otherwise have been done, consistent with the work of paving.

It is well settled in this jurisdiction that the plan. or method of improvement, as well as the necessity therefor, is a matter solely within the discretion of the legislative body, whose discretion in respect thereto is beyond review by the courts, in the absence of a showing of fraud or corruption upon the part of that body in the adoption or execution of the plan. In the recent case of Town of Russell v. Whitt, 161 Ky., 187, one of the complaints made by the property owner was that the construction of the street abutting his property failed, in certain particulars therein alleged, to conform to the contract under which the work of construction was to be performed. In overruling that complaint we said:

"The complaint made in the petition that the construction of the street abutting appellee's property failed, in the particulars therein alleged, to conform to the contract, may be eliminated from the case, because the work as completed was admittedly accepted by appellant's board of trustees; and their judgment is conclusive in the absence of a showing that they were guilty of fraud or mistake. This rule is stated in the case of Creekmore v. Central Construction Co., 157 Ky., 336, as follows:

" 'The defendants pleaded in their answers that the work (street construction) was not done in accordance with the contract and was in several respects defective. But the Council had regularly accepted the work and their action is conclusive upon the property owner in

the absence of fraud and collusion.' Henderson v. Lambert, 77 Ky., 25; Reuter v. Meecham Contracting Co., 143 Ky., 557; Newport v. Silva, 143 Ky., 704.''

It is also insisted for appellants that a number of the items which enter into the apportionment for the work of improvement done were originally embraced in a contract for the same construction, let to J. H. Francisco, and which the appellee town, upon his insolvency, completed; and that such items are not proper charges in the assessment against their property. It appears that the work of construction, or a part of it, was originally let to Francisco, that he became insolvent and by reason thereof the town, acting under advice of its counsel, made a settlement with Francisco's sureties accepting a specified sum by way of damages for his breach of the contract, which sum was applied to the further cost of the work; that the town took charge of the work and completed it without advertising for further bids. The work in question to the extent indicated having been done by the town itself, the provision of its charter requiring that contracts involving expenditures of more than $100.00 should not be made by municipalities except through competitive bidding, it seems to us, has no application. Under the embarrassing circumstances attending the failure of Francisco and his violation of the contract, the town could have relieved itself from the dilemma in no other way than that employed, and in so doing they minimized the loss to the greatest degree possible. We think it fairly apparent that this action of the town did not increase to an appreciable extent the cost to appellants or other property owners, of the entire work of construction, and it is also a well recognized rule of law in this jurisdiction that the burden is on the property owner to show that a wrong basis of apportionment was followed, and he must allege and prove facts showing such to be the case, and that under the proper method of apportionment he would be required to pay less. Barrett v. Stone, 21 R., 669; Chalk v. Beville, 21 R., 1769.

The complaint of appellants that the work performed by the Dunn Construction Company under its contract with the city had been originally let to Francisco at a lower price, is, we think, equally unavailing. It is true that the Dunn Construction Company, under its contract, did some paving work upon certain streets where

paving work had previously been let to Francisco, but the work performed by the Dunn Construction Company was a different work, under a different plan and involving larger territory than that covered by the Francisco contract. The board of trustees, following the passing of an ordinance directing the paving of certain of the streets upon a plan contained in the contract let to Francisco, concluded, after the failure of the latter to do the work according to a different plan and different system of drainage, and covering other streets than those included in the contract of Francisco. In view of this change of plan and the default of Francisco in his contract, which the town completed as before stated, the board of trustees, by proper ordinance, repealed the former ordinance under which the contract was let to Francisco, and adopted another, requiring that the larger work of construction be done according to the changed plans, the contract for which was let to the Dunn Construction Company as the lowest and best bidder.

In Horne, etc. v. Mehler, 23 R., 1176, which was an action to recover an assessment for street construction as in this case, the property owners pleaded that one J. M. McNaughton entered into a contract with the city to do the work in question and gave bond, but that without reason or right this contract was cancelled by the city and a new one made with one Gleason, by which the cost of the work was increased fifty per cent. They prayed that the amount of the work assessed against them in favor of Gleason be abated to that extent, but this complaint, upon being considered by the court, was held insufficient to constitute a defense.

In Gibson, etc. v. O'Brien, etc., 9 R., 639, it was held:

"That a prior ordinance had been passed to do the work for less money constitutes no defense. That ordinance had been repealed; and, if not, the failure of the city to abide its contract under it is with the party to the contract who has sustained damages by its breach; and, besides, reasons deemed sufficient by the city council existed why that contract should not be carried out."

It appears from the record that the work of street and sewer construction here involved was done under three ordinances and as many contracts. That under an ordinance of June 18, 1906, was commenced by Francisco and completed by the appellee town; the sewers were constructed by C. P. Sanburn under an ordinance

of the same date and a contract made by him with the town. The paving of the streets was done by the Dunn Construction Company by contract with appellee authorized by an ordinance of April 1, 1907.

In our opinion, none of the matters set up by the appellants' answer in resistance of the assessments sought to be enforced against their property, constitute a valid defense, hence they were properly rejected by the circuit court.

Having thus disposed of the matters of defense relied on by the appellants, as their answer was made a counterclaim, it now becomes necessary to determine whether a counterclaim can be pleaded or relied on by the appellants in this case. The three items of damages included in the counterclaim are: (1) that by the construction of the street and sewer in front of their residence property, a stream that ran through it and from which they had been accustomed to supply their stock with drinking water, was diverted elsewhere, which resulted in the deprivation to appellants of the use of the water; (2) that there was such a defective construction of the sewer in the street in front of their property as prevented a connection with it by a private sewer from their residence; (3) that by reason of appellee's abandonment of the contract with Francisco and the letting by it of the contract to the Dunn Construction Company, the cost of the entire work of construction was so increased as to unduly enlarge the apportionment of the cost imposed upon the property of appellants.

It may here be remarked that if appellants' counterclaim could be relied on, the above items of damage would not be recoverable upon the record presented. In the first place, the exclusive control given to the authorities of a municipality over its streets empowers them to fix the grades of the streets without liability for any damages occasioned thereby. The only instances in which the municipality can be made liable in damages to the abutting property owner from the establishing of the original grade of a street are such as result from such a negligent doing of the work as will interfere with the owner's use of his property. Hope v. City of Owensboro, 128 Ky., 524; Ewing, et al v. City of Louisville, 140 Ky., 726.

This action was instituted by appellee for the benefit of the bondholders, against whom the claim to damages

asserted by appellants cannot be maintained. The as-
sessment is in the nature of a tax imposed and appor-
tioned against appellants' property by appellee in its
governmental capacity for a public improvement. In en-
forcing its collection appellee is acting as the trustee of
the bondholders, and as said in 28 Cyc., 1161: "The fact
that an abutter has a remedy against the city for dam-
ages from change of grade does not affect his liability
for a paving assessment." In the same volume, on page
1229, it is further said: "In an action to enforce a spe-
cial assessment, defendant may not set up a counter-
claim against the city or the contractor;" and again on
the same page: "Damages for injury to property against
which an assessment is levied, may not be set up as a
counterclaim in an action to enforce the assessment."

The opinion in Bodley v. Finley, 111 Ky., 618, is de-
cisive of the question under consideration. In that case
the city of Louisville had ordered a street improved, and
issued apportionment warrants which were delivered to
the contractor. Suit was brought by the contractor to
enforce a lien existing by virtue of the warrant. The
property holder sued by the contractor held a note
against the latter, which he asked to be permitted to set
off against the assessment against his property, due upon
the apportionment warrant. This court held that the
note, under the circumstances of that case, was a proper
matter of set-off, but it is declared by the opinion that
a set-off, or counterclaim such as is relied on in this case,
cannot be maintained in a similar action brought by a
municipality. It is therein said:

"This brings us to a consideration of the question
whether a set-off or counterclaim can be pleaded against
a suit upon an assessment for local improvement. In
Burdy v. Drake, 17 R., 819; 32 S. W., 939, the question
was presented, but not decided, as the set-off there at-
tempted to be pleaded was not sustained by the proof. In
Dill. Mun. Corp., Section 810, it is said: 'As to agree-
ments between the corporation and a contractor to do
the work the abutters or property owners on whom the
expense falls are not parties, but are brought into direct
relation with the proceeding for the local improvement
for the first time when the assessment is made. An as-
sessment is a tax levied by the corporation upon property
to defray the expenses of the improvement, and the suit
to collect it (though brought by the contractor under au-

thority given for that purpose) is not the subject of set-off or counterclaim.' The cases cited in support of the text above quoted are California cases, to the effect, in general, that such an assessment is a tax 'levied by the corporation upon certain property to defray the expenses of the improvement of a street adjacent to the property.' Said the court, in Mimmelman v. Spanagel, 39 Cal., 393: 'The origin, obligatory force, and whole nature of a tax is such that it is impossible to conceive of a demand that might be set off against it, unless expressly so authorized by statute. No case has been cited, and probably none can be found, which authorizes a defendant, when sued for a municipal assessment or tax, to set up a counterclaim.' Undoubtedly, this reasoning applies with full force not only to cases of general taxation, but also to cases *where the municipality is asserting against a citizen a claim for a special assessment for local improvement, for which it has paid, or become bound to the contractor.* On grounds of public policy, the sovereign in the exercise of the power of taxation for governmental purposes must not be compelled to stay its proceedings in order to adjust its indebtedness to a citizen. And in this State, while we hold that these special assessments are not included under the designation of taxation in certain constitutional provisions, we nevertheless recognize that their imposition is an exercise of the sovereign power of taxation. Richardson v. Mehler (Ky.) 63 S. W., 957. But is any public policy violated in permitting a set-off against the claim of a contractor in whose favor this governmental power has been exercised? In such case a contract is entered into by the municipality, on behalf of the abutting property holders, with a contractor, for the making of the improvement. Under the statute this is held to give the contractor a lien upon such property for the contract price of the work. If, when he seeks to enforce his lien, the property holder is permitted to set off a demand against him, this does not in any wise interfere with the exercise of the governmental power, nor with the progress of the improvement. This claim is not one by the government, or by the municipality in the exercise of delegated governmental power. It is a private claim, for the enforcement of which a statutory lien is given. The only ground of public policy against the allowance of such a set-off would be the possibility that a prospective contractor

indebted to one or more abutting property holders might either refrain from bidding or make a higher bid than he would make if such set-off were not allowed. This objection does not seem to us very forcible, for we must assume that each contractor knows of the existence of all legal demands against him, and we cannot assume that he intends to avoid their payment. We reach the conclusion, therefore, that on proper showing a set-off may be allowed against a claim for street improvement in such cases as it would be allowed against the assertion of other liens upon property not having their origin in the exercise of governmental power."

In Board of Council City of Frankfort v. Brislan, 126 Ky., 477, it was held that an abutting property holder could set up a counterclaim for damages against the city in an action brought by the latter to enforce an apportionment warrant lien against his property, but in the response to a petition for rehearing, following the opinion, it is said:

"In a petition for rehearing the point is made on behalf of appellant, that appellee should not have the right to assert, as against the city's claim for street improvements, the counterclaim for damages. The improvement was not made by the city, but by a contractor, and the injury and resulting damage to appellee's property, if any, was committed by the contractor. After completing the contract, the contractor assigned his claim to appellant, and the rule that would deny a property owner the right to assert a counterclaim or set-off against the city, if the work had been done by it, and it was seeking to assert its lien, does not apply. As assignee of the contractor's claim, the city occupies no better position than the contractor, and appellee can set up against it any claim for damages that he could have asserted against the contractor. (Kentucky Statutes, sec. 474; Civil Code, sec. 19). The doctrine that the property owner may rely upon a set-off or counterclaim in a suit by a contractor is expressly decided in Bodley v. Finley, 23 Ky. Law Rep., 851, 64 S. W., 439; (111 Ky., 618). The petition for rehearing is overruled."

It is manifest from the foregoing authorities that this court has fully recognized the doctrine, that the property holder cannot in a state of case, such as is here presented, assert a counterclaim or set-off against the municipality in an action brought by the latter to en-

force a lien for the payment of an apportionment warrant for a street improvement.

The judgment appealed from dismissed appellants' counterclaim, enforced the appellee's apportionment liens, each as to the property against which it was asserted, and directed the sale of a sufficiency of each parcel to satisfy the lien against it. There is nothing in the record conducing to show any inequality in the assessments as made by the appellee's board of trustees for the cost of the street and sewerage construction; and as the cost of the improvements apportioned to appellants' property seems no greater than the benefits conferred, and the record discloses no error that we regard prejudicial to their substantial rights, the judgmen is affirmed.