# City of Springfield, et al. v. Haydon, et al.

(Decided October 26, 1926.)

## Appeal from Washington Circuit Court.

1. Municipal Corporations.—Competitive bidding on paving contracts must not be destroyed or impaired, but city council may require use of known material.

2. Municipal Corporations.—Ordinance, requiring use of rock asphalt of particular company where it was not in construction business, and three responsible bids were made, did not substantially deny competition so as to be void.

3. Municipal Corporations.—Motives in having paving done in particular manner or with particular material, not prohibited by law, and suitable, will not be inquired into; such decisions being for governing power, in absence of bad faith.

4. Municipal Corporations.—Ordinance providing for bridge over street, in fact creek, at expense of city, did not affect validity of subsequent ordinance for paving of street running over bridge on assessment plan by relieving property owners at intersection.

5. Municipal Corporations.—Statute providing for construction of street intersections applies only to intersections of real streets, and not to construction of bridge over water course called street.

6. Municipal Corporations.—That part of cost of construction of street was not assessed against property owners would not invalidate ordinance for improvement, but any error in assessment might be corrected.

7. Municipal Corporations.—If city, by ordinance for construction of bridge at its cost, and subsequent ordinance for paving, on assessment plan, of street running over it, exceeded its limit of indebtedness, contract for bridge only would be affected.

8. Municipal Corporations—Adjoining Property is Chargeable with Street Improvement on Ground of Benefit, and Whether Bridge Over Water Course is Benefit Depends on Circumstances.—Adjoining property is chargeable with street improvement on the ground of benefit to its market value, and whether a bridge over a water course is a benefit depends on whether it improves particular locality.

9. Municipal Corporations.—In determining whether bridge over water course benefited adjoining property so that it should be assessed, some weight should be given judgment of council that it did not and acquiscence by taxpayers.

10. Municipal Corporations.—They who stand by in silence and allow contractor to build bridge for city will not be heard to say that he should not be paid, because cost should have been assessed against property benefited.

11. Municipal Corporations—Council Held to Have Had Discretion to Take $12,000.00 Bond for Over $57,000.00 Paving Contract; Rec-

ord Not Showing Insufficiency to Cover Loss (Ky. Stats., Section 3643-2).—Council had discretion to take bond of $12,000.00 for over $57,000.00 paving contract to be paid as the work was accepted block by block under Ky. Stats., section 3643-2; record not showing insufficiency to cover any loss.

12. Appeal and Error.—Discretion of court in matter of amendments to pleading will not be controlled on appeal, unless it be abused.

13. Pleading.—Striking out amendment to petition held not abuse of discretion. where pleadings had been amended a number of times.

14. Municipal Corporations.—Councilman having interest in matter cannot vote on it.

15. Municipal Corporations.—Two members of council present and not voting on ordinance are to be counted as acquiescing in what was done.

16. Municipal Corporations.—Issuance of bonds at completion of each block of paving if unauthorized does not affect validity of ordinance providing for improvement.

17. Municipal Corporations.—Error, if any, in issuing bonds as paving was completed block by block, instead of at completion of work, might be corrected in suit to restrain proceedings under ordinance providing for paving.

18. Municipal Corporations.—That ordinance, providing for paving, did not specify depth to which lien therefor should extend in property not cut up into blocks, was defense only to its owners, and did not affect validity of ordinance or contract under it.

19. Municipal Corporations.—Ky. Stats., section 3620, authorizing council to appoint engineer, leaves his duties to be prescribed by council.

20. Municipal Corporations.—Authorized acts of engineer employed by fifth class city to supervise paving contract are valid, particularly as between third persons, though he was nonresident, and ineligible as city engineer under Ky. Stats., section 3620.

POLIN & POLIN and W. F. GRIGSBY for appellants.

W. C. McCHORD for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing on original appeal; affirming on cross-appeal.

The city council of Springfield on March 6, 1925, enacted an ordinance for the improvement of Main street and Main cross street, as therein set out. Due notice was given; three bids were made for the contract; the city council accepted the lowest bid, but before the contract was signed a taxpayer brought a suit in the Washington circuit court attacking the validity of the ordi-

nance and praying an injunction restraining the council from proceeding further. The clerk granted a temporary restraining order. When court came on other taxpayers filed an intervening petition, setting out more fully the grounds for an injunction. On the hearing the court discharged the temporary restraining order granted by the clerk and refused to grant an injunction. An application was then made to a judge of this court; the case came before the eastern division and an order was entered overruling the motion. The intervening plaintiffs after this amended their petition, alleging other grounds for the relief sought, and alleging more fully the grounds theretofore set up. On final hearing the circuit court held the ordinance invalid and granted the plaintiffs a permanent injunction as prayed in their petition, on the ground that the ordinance was void. In the meantime the contractor had closed his contract and finished a large part of the work. The city and the contractor prosecute the appeal before us and the intervening plaintiffs prosecute a cross-appeal.

The contract was for the reconstruction of the streets. After the base and top were prepared, as specified in the ordinance, a wearing surface of Kentucky rock asphalt was required to be laid thereon as specified. The only question as to the validity of the ordinance which was considered by the circuit court is as to its requirement of Kentucky rock asphalt. Its provisions, so far as material, are as follows:

"The Kentucky rock asphalt shall be the standard Kentucky rock brand of natural bituminous sandstone which has been mined or quarried from proven deposits of bituminous sandstone in Edmonson county, in the state of Kentucky, and shall be from a site or a place in a geological formation that has produced standard Kentucky rock asphalt which has been used as a successful paving material for a period of five (5) years immediately preceding this date.

"The rock asphalt shall be composed of natural asphalt and silica sand as herein specified and shall be used as produced, with no preparation other than crushing and grinding to the proper consistency as standardized by the Kentucky Rock Asphalt Com-

pany. Each proposal shall be accompanied by a service affidavit naming the brand or the producing company of the material proposed to be used and citing three or more states, counties, or roadways where this material is at this date in good serviceable condition after five years of use under present-day traffic, without maintenance or repair due to inherent defects of the material proposed to be used.

"No bitumen, sand or other material shall be added to or mechanically mixed with the natural rock asphalt. The rock asphalt shall be so crushed and pulverized that when tested by means of laboratory sieves it shall meet the following requirements. . . . " (Here specifications follow).

In several other places in the ordinance, in speaking of the rock asphalt to be used, it is called Kyrock, which is the trade name of the asphalt produced from the mine of the Kentucky Rock Asphalt Company in Edmonson county. While it is shown that there are several companies getting out Kentucky rock asphalt of the same quality as that mined by the Kentucky Rock Asphalt Company, none of these companies had been doing business for five years when the ordinance was passed and their product is not sold in the market as Kyrock. The circuit court was of opinion that the ordinance limiting the construction of the surface of the street to the asphalt rock mined by the Kentucky Rock Asphalt Company rendered the ordinance void. That company is not in the business of building streets. Its only business is mining the rock and selling it on the open market. It also appears that its prices for its rock were practically the same as the prices then charged by the other companies for their rock; although it does appear that one of these companies would have sold its rock one dollar a ton cheaper in order to get this contract, if its rock had come within the specifications. The ordinance was drawn, as appears from the testimony of the councilmen, because streets had been constructed at Bardstown, at Lebanon and at Stanford of this rock. These streets had stood well and the members of the council thought it best to order the construction from a rock which they knew would stand and not to run the risk of getting an inferior asphalt.

While there is some conflict of authority on the question the result of the weight of authority is thus stated in 19 R. C. 358, in these words:

"In other jurisdictions the opposite view is taken, on the ground that it would bring about a harmful result which the legislature cannot be supposed to have intended if the public should in effect be barred from taking advantage of recent inventions or obtaining beneficial improvements because they were covered by an authorized patent, or were the product of an exclusive manufacture, and the producer did not find it necessary to underbid his less well equipped competitors, and it is accordingly held that an advertisement for bids may lawfully specify an article covered by a patent or a trade name, if the article is different from other products and may fairly be considered superior in quality."

A number of authorities are collected sustaining the text. To same effect see also the following: Milner v. City of Trenton, 80 N. J. Law 253; Mueller v. Boulevard Commissioners, 87 N. J. Law 702; Sherrett v. City of Portland, 62 Ore. 101; Adams v. Van Zandt, 199 N. Y. S. 225; Wurdeman v. City of Columbus, 158 N. W. 924, Rhodes v. Board of Public Works, 10 Col. Ap. 99. The reason for the rule is thus stated in the case last cited:

"If the whole of some certain kind of property which is in demand, is owned by a single individual, it could be of no benefit to him to continue to hold it indefinitely. The presumption is that he desires to convert it into money, and that he will sell it to others. In a majority of instances, the successful competitor for a contract is not himself the owner of the material necessary for the purposes of his contract, but must purchase it from the person or persons having it, and if there is only one such person, it must be purchased from him. It would be contrary to experience to assume that, whether the material is in one ownership or several, it cannot be purchased. The fact that some particular material in common use is the subject of exclusive ownership, furnishes in itself no sufficient reason why, with reference to that material, there could not be genuine competition between individuals or companies un-

connected with each other." Rhodes v. Board of Public Works, 10 Col. R. 112.

The reason for the contrary ruling was thus stated in Fishburn v. City of Chicago, 63 A. S. R. 240, the leading case on that side of the question:

"If it be the judgment of the city council that the most suitable and best material to be used in any contemplated improvement is the product of some particular mine or quarry, or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so framed as to make such production, substance or compound the standard of quality and fitness, and to require that material equal in all respects to it should be employed. An ordinance making it indispensable that an article or substance in the control of but a certain person or corporation shall be used in the construction of a public work must necessarily create a monopoly in favor of such person or corporation, and also limit the persons bidding to those who may be able to make the most advantageous terms with the favored person or corporation."

The difficulty with this rule is that the members of a city council are not experts in judging of material, and that if loopholes are given they are often misled by contractors, who furnish a material which is in fact inferior to that specified, but the defect is not discovered until too late. When a certain rock is known to be good, no risk is taken in requiring its use. Competitive bidding must not be destroyed or impaired. But if there may be free and fair competitive bidding when a certain rock is required the city council may, if it thinks best, take no risks and require the use of the known material. In this case the Kentucky Rock Asphalt Company had been getting out rock for a number of years. With this rock a number of streets and roads in this and other states had been built. The company was not in the construction business. It simply got out its rock and sold it upon the market. It had no interest in the bids or in the work. Three responsible bids were made. To hold that there was a substantial denial of competitive bidding here is for the court to shut its eyes to the facts.

This case is entirely unlike Fineran v. Central Bitulithic Paving Co., 116 Ky. 495. In that case the com-

pany alone made the material of which the street was built. It not only made the material but it was in the business of constructing streets. It was one of the bidders for the contract, and got the contract to construct the street out of the material which it alone manufactured and which no other bidder could get except from it. Under such circumstances there could reasonably be no real competitive bidding, and the ordinance was therefore held void. The subsequent cases in this court go no further than that case, and in other states the cases denying the validity of the ordinance are in the main cases where there was no real competitive bidding. That is not the case here. The precise question now raised was not presented on the motion for an injunction. But the additional facts now shown are insufficient to change the conclusion of the court then reached as to the validity of the ordinance.

"In the Fineran case, *supra*, we adopted the rule as above announced, and it has never been departed from by this court. Plaintiffs insist the principle there announced is conclusive against the validity of the franchise ordinance, because, as they claim, it gives Byllesby Company a double advantage in the bidding, either one being sufficient to invalidate it. It must be remembered, however, that the rule does not apply unless the advantage, by its terms, excludes other bidders." Gathright v. Byllesby & Co., 154 Ky. 133.

"In the Fineran case a material was specified, a monopoly upon which was owned and controlled by a single company. A single bid under such a letting by the company holding the monopoly on the prescribed material was the lowest and best bid; but, no one else being able to obtain that particular kind of material, competitive bidding was impossible; and as competitive bidding was desired, of course, and the only kind contemplated, the legislature might reasonably be presumed to have inserted these new words in the law for the purpose of holding the bidding open to competition at all times, and for the purpose of preventing the letting of a contract to the lowest and best bidder when the specifications prevented all but one party from bidding." Denton v. Carey-Reed Co., 169 Ky. 56.

"The granite blocks complained of are suitable for and much used in the construction of streets, and while it might be more expensive than other materials, and perhaps not as suitable for the purpose, still such questions under the authorities, *supra,* are, in the absence of fraud and bad faith, for the determination of the governing authority who is authorized to have the work done, and its motive or purposes in having it done in a particular manner or with a particular material, if not prohibited by law, and the material is suitable for the purpose, will not be inquired into, especially if the work is completed without proper objections from the property owner."
Realty Savings Co. v. The Southern, etc., Company, 180 Ky. 247.

There is no complaint of the ordinance as to any part of the work except the finishing coat of rock asphalt. The circuit court, therefore, erred in holding the ordinance void.

It is also insisted that there was discrimination in favor of a member of the council rendering the ordinance void. What is called Water street on the plot of the town is a creek running through the town. It has never been improved or travelled as a street. Where it crosses Main street there had for years been an iron bridge, which, in the judgment of the council, had become defective from age. They passed an ordinance providing for the erection of a concrete bridge at the cost of the city, and pursuant to it the concrete bridge was built and paid for by the city. It is insisted that this relieved the property owners on Main street from paying for this intersection and that one of the councilmen owned property at this intersection. But the ordinance for the building of the bridge was an entirely independent ordinance from the ordinance for the construction of Main street. The contractor for the building of Main street, who is the real defendant to this action, had nothing to do with the construction of the bridge and does not claim under that ordinance. The validity of the ordinance under which his work was done cannot be affected by the prior ordinance in regard to the bridge. The statute providing for the construction of street intersections only applies to intersections of real streets. It has no application to the construction of a bridge over a water course which crosses the street.

Complaint is also made that opposite the Baptist church, of which one of the councilmen is a member, part of the cost of the construction of the street was not assessed against the property owners, but if there was any error in this is may yet be corrected. The error in the assessment would in nowise invalidate the ordinance for the improvement.

It is also insisted that the amount the city will have to pay exceeds the limit of its indebtedness. The evidence does not satisfactorily show this, but, if true, this would only affect the validity of the contract for the construction of the bridge referred to and would in nowise affect the validity of the ordinance here in question. There is no showing that the city will incur any indebtedness under the latter ordinance in excess of the constitutional limit.

Adjoining property is chargeable with the improvement of the street on the ground that it is benefited in the market value thereby; but whether a bridge over a watercourse is a benefit to the adjoining property is a question dependent upon the circumstances.

"Where the benefits derived from the erection of a bridge are local in their character, and the purpose and effect of the building of the bridge is to improve a particular locality its cost may properly be assessed specially against the locality benefited. But where bridges are for the benefit of the general public, special assessments cannot legally be made to pay the expense of constructing them. The expense in such a case is a subject of general taxation." 25 R. C. L., p. 105.

Some weight will be given in such cases to the judgment of the council and the fact that its action was acquiesced in by the taxpayers of the city. They who stand by in silence and allow the bridge to be built will not be heard to say that the contractor should not be paid. Peicke v. City of Covington, 198 Ky. 684.

It is also insisted that the bond executed by the contractor was insufficient. Section 3643, subsection 2, Kentucky Statutes, provides:

"The city council shall require the accepted bidder to execute a bond to the city, with good and sufficient security, to be approved by said council for the faithful performance of his contract."

The city council took from the contractor a bond pursuant to the statute, but fixed the limit of the bond at $12,000.00. As the premium on a bond varies with the amount of the liability it is customary now in giving these bonds by a surety company to fix the amount of liability. The city council deemed that $12,000.00 was sufficient for the amount of the bond, because the work was to be accepted block by block and the contractor was to be paid nothing until it had been so accepted. The estimated amount of the contract was $57,328.95, but the actual amount was something over this. The record fails to show that the bond is insufficient to cover any loss that may occur or that the taxpayers will be in anywise prejudiced. Some latitude must be left to the judgment of the council in matters of this sort.

In addition to the above, appellees' amended petition complains of a number of other matters, which were relied on as rendering the ordinance and the proceedings thereunder void. The court struck out the amended petition, and of this the appellees on cross-appeal complain. But the pleadings had a number of times been amended. The court may exercise its discretion in the matter of amendments, and its discretion will not be controlled on appeal unless abused. There was no abuse of discretion here in striking out the amendment. The matters complained of are these:

1. It is alleged that one councilman was interested. A councilman having an interest in the matter cannot vote on it. The record shows that all councilmen were present and that no one voted against the ordinance. It is immaterial that two members did not vote. They were present and are counted as acquiescing in what was done when they did not vote in the negative. Lawrence Co. v. Fiscal Court, 191 Ky. 45.

2. It is alleged that the city was without power to issue bonds until the contract was completed, and that in fact it issued bonds for each block of the improvement as it was completed. But this in nowise affects the validity of the ordinance. This action was brought to test the validity of the ordinance. If there has been any error made in the issuing of bonds that may not be corrected in this action. But as the work was to be paid for block by block and was to be paid for by the issuing of bonds, there seems to have been no adequate way to carry out

the contract except to issue the bonds as each block was completed.

3. It is also alleged that a part of the territory was not divided by streets, or cut up into blocks, and that the ordinance failed to specify the depth to which the lien for the improvement should extend. But this will be only a defense for the people who owned this property, if to anybody. It need not be considered here, for it in nowise affects the complainants.

4. It is also alleged that the council employed an engineer to supervise the construction of the street who was not a resident of the city and was ineligible to be city engineer. By section 3620, Kentucky Statutes, the city council may appoint a city engineer, but it is not required to do so. The statute does not prescribe his duties. All this is left to the discretion of the council. In cities of the fifth class it often happens that there is not within the city an engineer who has had any experience in such work as the contract here provided for. Construing a similar statute under like circumstances, this court, in Tenn. Paving Brick Co. v. Barker, etc., 119 Ky. 658, thus stated the rule:

"It seems to be contemplated that in cities of this size it might not always be practicable to secure a competent person for city engineer. The council in the exercise of the plenary duties imposed upon it may, in its discretion, employ an engineer for a particular work, and his acts done under authority of the council, and accepted and approved by it, are as valid as if done by a regularly elected city engineer. The purpose of the statute is to confide in the council, as the ultimate governing body of the city, the selection of these subordinate agents, and when an engineer is employed by it and acts as city engineer, as in the case before us, his acts are certainly good as between third persons."

To same effect see Wallace v. City of Louisa, 273 S. W. 720.

On the cross-appeal the judgment is affirmed; on the original appeal the judgment is reversed and the cause remanded, with directions to dismiss the petition. Whole court sitting.