## City of Mount Sterling v. Childers et al.

(Decided December 18, 1928.)

HENRY WATSON for appellant.

E. W. SENFF and W. B. WHITE for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

During the year 1925, the city of Mt. Sterling conducted a comprehensive plan of street improvement. A necessity resolution was passed on February 13, and the ordinance finally approving the work and apportioning the improvement was adopted on the 6th of October. The regularity of these and all intermediary proceedings is not questioned. R. A. Childers had record title to an undivided parcel of land abutting Spring street, one of the streets thus improved, for a distance of 480 feet; the apportionment of cost upon this property being $1,861.68. Claiming that he had theretofore sold 150 feet on the west

end of this lot, on October 12, he paid the treasurer $552.90 as the pro rata of the property sold, and further asserted that the remainder of the lot was of less value than the cost of the improvement, and declined to pay exceeding $150 therefor. The city sued him and his vendees, Mrs. Grace Bedford and Mrs. Maggie Gibbs, to enforce its lien for the full assessment and 10 per cent. penalty on the entire lot as the property of R. A. Childers.

Defendants answered, setting out a conveyance by R. A. Childers to his co-defendants of 153 feet facing Spring street by deed executed November 15, 1924, and recorded October 17, 1925; the vendees further alleging that notice of such conveyance had been given the city engineer prior to the performance of the work or passage of the apportionment ordinance, and denying any liability upon their lot except as to its pro rata of the apportionment. Proper pleadings made up the issues, and upon proof heard the chancellor upheld the defendant's contention, and further found the remainder of the lot owned by R. A. Childers to be of the reasonable value of $700, and adjudged it subject to a lien for $350. The city appeals.

R. A. Childers is an old gentleman living in Mt. Sterling and the vendees (his daughters) live in the county. He testifies in a vague sort of way that he received some money (amount not remembered) from his deceased wife many years ago, and had promised his daughters to convey them this property in payment of that debt. The deed was drawn by Mrs. Gibbs and acknowledged before her husband. He retained possession of the property so conveyed, collected rents thereon, and paid the city treasurer its pro rata of the apportionment. He did this for his daughters and accepted from them a note for the amount thus paid. The city treasurer later tendered him back this money, and he declined to accept. In the spring of 1925, and before any work on the street was begun, he informed the city engineer of this conveyance, and pointed out the remainder of his lot. This was under fence, and had been for five years, and its value did not exceed $300.

Mrs. Bedford testified that she was out of the state at the time of the execution of the deed, and had never seen it, but had been informed of the transaction by Mrs. Gibbs. Her father owed them some money, which he had received from their mother, and had promised to make this deed in payment thereof. She and her sister

executed their notes to their father for the amounts he had paid for the assessment of this property. Neither Mrs. Gibbs nor her husband testified. No actual delivery or acceptance of the deed was proven by any one, and it does not appear in whose possession it remained during the time between its execution and its recordation, nor does it appear who had it recorded. One Ratcliff corroborates R. A. Childers as to his conversation with the city engineer. The city engineer admits having several conversations with Mr. Childers. The first was after the grading of the street had begun under the contract. He says at that time Mr. Childers told him that he was going to pay on the frontage abutting the residence lot, but would not pay on the other. He, however, denies that Childers at any time made any reference to the sale of the land on which the residences were situated. He relied alone on the deeds of record in fixing the apportionment, and had no information at all as to the conveyance of any part of the property. The city treasurer admits the payment to him of the amount claimed, but he was in ignorance of the facts, and upon learning them a day or so afterward tendered the money back to Childers, who declined to accept it. Other witnesses testify as to the value of the property.

The question presented for determination is similar to those raised in White v. City of Williamsburg, 213 Ky. 90, 280 S. W. 486, and Bayes v. Town of Paintsville, 166 Ky. 679, 179 S. W. 623, L. R. A. 1916B, 1027, with the situation of the parties reversed. In those cases the grantors, whose lands were subject to improvement assessments prior to any action being taken by the city council, but after the matter of street improvement had been publicly discussed, carved from their respective lots small strips of land immediately abutting the improvement, and of far less value than the cost of the improvement, and conveyed these to near relatives without a valuable consideration. The deeds were not recorded until after the ordinance ordering the improvement was made. It was contended that the remaining land held by the grantors did not abut on the improvement and was therefore not liable for the assessment. The court held that the conveyances were a mere scheme to avoid payment of assessment upon grantees' remaining lands and that the liability of the entire lot for the cost of improvement was not affected thereby. At the time of the ren-

dition of those opinions, Paintsville was a town of the sixth class, and Williamsburg a town of the fifth class, the charters of both being similar as to the time when assessment liens should accrue; that is, "from the date of the passage of the ordinance ordering the improvement made" (sections 3643-9 and 3706, Ky. Statutes), while section 3574, relating to cities of the fourth class, including Mt. Sterling, provides that the lien shall "take effect upon the publication of the ordinance making the assessment and levying the tax." However the deed attacked in each case was executed before the passage of any ordinance, but not recorded until after the assessment lien had accrued and both cases are in point.

Section 3574 further provides that "the lien . . . shall take precedence over all other liens, whether created prior or subsequent to the publication of such ordinance, except state and county taxes, general municipal taxes and prior improvement taxes, and shall not be defeated or postponed by any private or judicial sale. . . ." We may assume that the Legislature did not intend to prevent an owner of property, upon which future special assessments may be levied, from subdividing and selling portions thereof before any lien accrued, even though his purpose might be to relieve his unsold property from the burden of taxation upon the part conveyed, if nothing transpires to estop him from so doing. Conversely, if the transaction is a mere scheme to avoid his just portion of the tax, and not disclosed until after authoritative action is taken by the municipality, such conduct is in reality an evasion of the statute, and he should be estopped from relying on it to the prejudice of the municipality and other taxpayers.

It is unnecessary, however, to apply the above principles to the facts of this case, or to discuss the probable effect of Childers' conversation with the city engineer, as it may turn on the validity of the conveyance. The evidence of consideration is vague and unsatisfactory, though we do not think this material, except in so far as it may shed light on the other features of the transaction. The deed was executed three months before any action was taken by the city touching improvements of the streets, but at a time when the matter was being discussed. Childers does not say the deed was delivered. Mrs. Bedford never saw it. Mr. and Mrs. Gibbs did not testify, and the city engineer was positive that, in his

conversations with him, Childers did not claim he had conveyed the property. Childers remained in possession and full control of the property, and not only collected the rents, but also furnished the money which he paid the city treasurer. The deed was not filed for record until after the lien attached. It does not appear who presented it, but under the circumstances above set out presumably this was done by the grantor. Even if it be assumed that this was, as between the parties, prima facie evidence of delivery, such presumption is negatived by the other evidence, and we are constrained to hold that there was no valid delivery or acceptance of the deed, and that the rights of the city were not affected by its execution.

Appellee strongly insists that in no event can the 10 per cent. penalty provided by section 3563 for the failure to pay the assessment within 30 days after the enactment of the apportionment ordinance be collected, because, as he says, he was unable to ascertain at that time the amount of taxes for which he was liable and for which he should tender payment. We do not agree with this contention. The amount due on the lot was definitely ascertained at the time of the tender, and his refusal to pay more was in reliance upon the invalid deed, which we have seen was but a mere contrivance to avoid payment of the greater portion of his assessment. It follows that the city acquired a lien on the entire property abutting on the improvement for the cost of such improvement and the 10 per cent. penalty on the unpaid portion of his assessment, and the court erred in not so adjudging.

Wherefore the judgment is reversed, with instructions to enter judgment in conformity with this opinion.