# Bosshammer et al. v. Town of South Fort Mitchell, for Use of Edwards et al.

(Decided Feb. 13, 1934.)

A. L. INSKEEP for appellants.

CHARLTON B. THOMPSON and ROUSE & PRICE for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The town of South Fort Mitchell, a municipality of the sixth class, acquired in the year 1927 a 15-foot strip of land for the purpose of widening Virginia avenue, one of its streets. By ordinance enacted on July 3, 1928, it ordered the improvement of Virginia avenue

by the installation of water mains at the cost of the abutting lot owners. The improvement was on the 10-year plan, and the cost amounting to 90 cents per foot was assessed against the adjacent lots. On August 7, 1928, the town ordered the improvement of Virginia avenue by paving, grading, etc.

J. J. Bosshammer and wife owned a lot abutting 204 feet on Virginia avenue. On July 14, 1928, they conveyed to Elizabeth Theobald a 10-foot strip of land next to Virginia avenue, so that none of the remaining portion of their lot abutted on the street.

On April 14, 1930, a holder of the bonds issued for the improvement of Virginia avenue sued the Bosshammers and Elizabeth Theobald in the name of the town to enforce the lien on their lot for the improvement. Billiter, Miller & McClure, a partnership, who held interest coupons on the bonds issued for the water main improvements, which were in default, were made parties and called on to assert their lien, which they did in an answer that was made a cross-petition against the Bosshammers. The answer of the Bosshammers to the cross-petition was in four paragraphs, and presented the following defenses: (1) A traverse; (2) the lot did not abut on the improved street; (3) fraud of the town in acquiring the 15-foot strip and using it for widening Virginia avenue; (4) the aggregate of the improvement liens exceeded 50 per cent. of the value of the lots. Elizabeth Theobald, the grantee of the 10-foot strip, also defended on the ground that the strip was worth only $50, and that plaintiffs were entitled to a lien thereon for only 50 per cent. of its value. Demurrers were sustained to paragraph 4 of the answer of the Bosshammers, and also to the answer of Elizabeth Theobald, and the material allegations of the remaining part of the answer of the Bosshammers were traversed. After hearing the evidence, the court adjudged the lien on the entire lot for the assessments, and ordered its sale to satisfy the lien. The Bosshammers and Elizabeth Theobald appeal.

The first ground on which a reversal is asked is that the lot did not abut on the improved street at the time the improvement ordinance was passed. The petition charged in substance that the conveyance of the 10-foot strip was for the fraudulent purpose of evading the assessment for the improvement. The facts are

these: The conveyance was made after the filing of the petition requesting the improvement and the adoption of the grade ordinance. Mrs. Theobald, the grantee, is a sister of Mrs. Bosshammer. The consideration for the deed was $1. An easement over the strip was reserved for the purpose of enabling the Bosshammers to reach their garage. The strip itself is practically worthless. In view of these circumstances, it cannot be doubted not only that it was generally known, but that the Bosshammers had actual knowledge, that the improvement would be made, and that the conveyance was a mere device to defeat the assessment for the improvement. Where that is the case, the conveyance will not relieve that portion of the lot retained by the grantor of the lien created thereon by the statute (Ky. Stats. sec. 3706). Bayes v. Town of Paintsville, 166 Ky. 679, 179 S. W. 623, L. R. A. 1916B, 1027; White v. Williamsburg, 213 Ky. 90, 280 S. W. 486; City of Mt. Sterling v. Childers, 227 Ky. 52, 11 S. W. (2d) 1008.

■ ·The next defense is that the town purchased of the Hedge Park Realty Company the 15-foot strip of ground between Virginia avenue and the property of appellant for the sole and fraudulent purpose of placing upon the property of appellant an assessment for which the property was not liable. Towns of the sixth class have the power "to acquire property for municipal and for cemetery purposes by purchase or otherwise." Section 3660, Kentucky Statutes. The boards of trustees of such towns have the power "to purchase, lease or receive such real estate and personal property as may be necessary and proper for municipal purposes and control, dispose of and convey the same for the benefit of the said town." Section 3704-1, Kentucky Statutes. The board of trustees also has control of all street improvements, and it cannot be doubted that the purchase of land for the purpose of widening a street is a municipal purpose. Here the trustees purchased the 15-foot strip for the purpose of widening the street, and used the land for that purpose. After the improvement the land of appellants abutted on the street, and the trustees had the power to assess the cost of the improvements against their land. In the circumstances the trustees had the power to act, and did act, within the limitations prescribed by law, and where that is the case, the courts, in the absence of bad faith, will not inquire into their motives or control their dis-

cretion at the instance of one whose property has been burdened with a cost which the trustees had the right to impose. Peicke v. City of Covington, 198 Ky. 683, 249 S. W. 1008; City of Springfield v. Haydon, 216 Ky. 483, 288 S. W. 337.

■ It is next insisted that the demurrer of Billiter, Miller & McClure to the answer pleading that the assessments exceeded 50 per cent. of the value of the property, should not have been sustained. The demurrer was sustained on the ground that assessments for the construction or laying of water mains were not included in the 50 per cent. limit. The statute, section 3706, Kentucky Statutes, in so far as material. reads as follows:

> "The cost and expense incurred in constructing, reconstructing or laying sidewalks, curbing, streets, avenues, highways, public places, sewers, water mains and connections with sewers and water mains shall be paid out of the general fund of the town, or by the owners of lands fronting and abutting thereon, as the board of trustees may in each case determine, but the local assessment therefor shall not exceed fifty per centum of the value of the ground after such improvement is made, excluding the value of buildings and other improvements upon the property so improved. Provided that an additional one dollar per front or abutting foot may be assessed for the constructing and laying water-mains as provided herein."

Under the statute in force prior to the amendment of 1926, there was no authority for constructing water mains either out of the general fund or at the cost of abutting property owners. Section 3706, Kentucky Statutes 1922. The amendment, as will be seen from the language above quoted, adds the words "water mains and connections with sewers and water mains," and after providing that the cost of the improvements shall be paid out of the general fund of the town, or by the owners of land fronting and abutting thereon, as the board of trustees may in each case determine, and further providing that the local assessments therefor shall not exceed 50 per cent. of the value of the ground, etc., adds the following:

> "Provided that an additional one dollar per front

or abutting foot may be assessed for the constructing and laying water-mains as provided herein.''

It is true that if the proviso be disregarded the statute includes water mains within the 50 per cent. limit, but some effect must be given to the proviso. It clearly provides that an additional $1 per front or abutting foot may be assessed for the constructing and laying water mains as provided herein. Additional to what? There can be only one answer, and that is additional to ''the fifty per centum of the value of the ground'' mentioned in the statute, and immediately preceding the proviso. In short, the purpose of the proviso was to qualify the preceding language, and authorize the assessment of $1 per front or abutting foot for the constructing and laying of water mains in addition to the 50 per cent. assessment authorized for other improvements. That it was within the power of the Legislature to exempt the cost of water mains from the 50 per cent. limit there can be no doubt. The difference between water mains and ordinary street improvements is apparent. Small towns are not able to construct a water system at their own expense. Water mains are essential to the proper distribution of the water, and cannot be made effective if there are gaps in the system. There being a reasonable basis for the classification, the act is not discriminatory in that it excludes water mains from the 50 per cent. limit, and imposes no other limitation than the $1 per front or abutting foot.

■ We have carefully reviewed the evidence bearing on the question and find no reason to disturb the conclusion of the chancellor that at the time the assessment was made the property involved, excluding improvements, was worth more than twice the amount of all the improvement assessments.

Judgment affirmed.